Daniel J. Wadley (10358)
wadleyd@sec.gov
Amy J. Oliver (8785)
olivera@sec.gov
Attorneys for Plaintiff
Securities and Exchange Commission
351 South West Temple, Suite 6.100
Salt Lake City, Utah 84101
Tel.  801-524-5796
Fax: 801-524-3558

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>PLAINTIFF,<br><br>v.<br><br>JOHN SCOTT CLARK,<br><br>DEFENDANT. | **COMPLAINT**<br><br>Case No.: 1:16-cv-00040-JNP<br><br>Judge Jill N. Parrish |

Plaintiff, Securities and Exchange Commission (the "Commission"), for its Complaint against Defendant John Scott Clark ("Clark") alleges as follows:

## INTRODUCTION

1. This matter involves an offering fraud operated by John Scott Clark. Since at least 2009, Clark and a business partner raised approximately $1,778,500 million from 46 investors.

2.      Clark and his business partner solicited investors for a "top secret" Iraqi dinar and oil investment scheme that guaranteed spectacular returns of more than 10% to 15,000% within 90 days.

3.      Clark told investors that within 90 days a $1,000 investment would return $125,000 to them and that a $20,000 investment would guarantee a $3 million payout.

4.      Clark told investors that he and his business partner were members of a top secret U.S. military and government program and held special security clearances which enabled them to invest in the purchase and sale of Iraqi dinar and oil contracts.  Clark told investors that he and his business partner owned Iraqi dinar and oil contracts with various foreign governments and large oil companies.  Clark and his business partner solicited investors to purchase interests in their Iraqi dinar and oil contracts.

5.      Clark told investors that their investments would be used to fund Iraqi dinar and oil contracts.  Clark told investors that after Clark and his business partner were paid, Clark would make weekly payments to his investor group.  Clark told investors that the investment risk was low and that the returns were "too good to be true" and "[all] you have to do for that is not talk about it."

6.      Clark reiterated the highly classified nature of the investment opportunity and touted the guaranteed returns.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction by authority of Sections 20 and 22 of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. §§ 77t and 77v] and Sections 21 and Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78u and 78aa].

8. Defendant, directly and indirectly, singly and in concert, has made use of the means and instrumentalities of interstate commerce and the mails in connection with the transactions, acts and courses of business alleged herein, certain of which have occurred within the District of Utah.

9. Venue for this action is proper in the District of Utah under Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and under Section 27 of the Exchange Act [15 U.S.C. § 78aa] because certain of the transactions, acts, practices, and courses of business alleged in this Complaint took place in this district and because defendant resides in and transacts business in this district.

10. Defendant, unless restrained and enjoined by this Court, will continue to engage in the transactions, acts, practices, and courses of business alleged herein and in transactions, acts, practices, and courses of business of similar purport and object.

11. Defendant's conduct took place in connection with the offer, purchase and/or sale of investment contracts which are securities.

## DEFENDANT

12. **John Scott Clark**, age 63, is a resident of Cache County, Utah. On March 25, 2011, the Commission charged Clark with operating a $47 million Ponzi scheme. SEC v. John Scott Clark, Impact Cash, LLC and Impact Payment Systems, LLC, Case No. 1:11-CV-00046 DAK (D. Utah 2011). Final judgment was entered on August 19, 2013, permanently enjoining Clark from violating the federal securities laws and ordering him to disgorge $5,591,685 and pay prejudgment interest of $374,017. On April 30, 2009, Clark was charged in the United States District Court for the Southern District of New York with money laundering, bank fraud and

3

illegal gambling.  USA v. Clark, 09-CR-1176 (RWS) (S.D.N.Y. 2009).  Clark pled guilty and was placed on supervised release for a period of 5 years, which ended on August 13, 2015.

## STATEMENT OF FACTS

### Background

13. Clark and his business partner solicited investor funds for a purported "top secret" investment opportunity involving Iraqi dinar and oil contracts.

14. From approximately 2009 through February 2016, Clark and his business partner solicited at least $1.7 million from approximately 46 investors, some of whom were investors in Clark's earlier Ponzi scheme.  Clark also solicited members of his church congregation.

15. Clark told investors that he and his business partner were members of a top secret U.S. military and government program and held special security clearances which enabled them to invest in the purchase and sale of Iraqi dinar and oil contracts.

16. Clark told investors that he and his business partner owned Iraqi dinar and oil contracts with various foreign governments including China, Iraq, Australia, Belgium, and several large oil companies, including Shell and Mobil, which paid returns to Clark and his business partner.

17. Clark solicited investors to purchase interests in Clark and his business partner's Iraqi dinar and oil contracts.  Clark told investors that their investments would be used to fund Iraqi dinar and oil contracts.

18. Clark told investors that his business partner had special corporate, military and government access through ties to the President of Kuwait, the President of the International Monetary Fund, President Barak Obama, and three former U.S. Presidents.

19. Clark told investors that after Clark and his business partner were paid, Clark would make weekly payments to his investor group.

20. Clark told investors that the investment risk was low and that the returns were "too good to be true" and "[all] you have to do for that is not talk about it."

21. Clark reiterated the highly classified nature of the investment opportunity and touted the guaranteed returns.

22. Clark told prospective investors that he personally invested funds in the deal and had already received investment returns.

23. Clark told investors that the investment opportunity was open for only a short amount of time and urged investors to deposit funds quickly.

24. Clark provided investment agreements to investors that guaranteed, in writing, annual returns in excess of 3,000% per year.

25. Clark instructed investors to deposit funds into bank accounts that were not in his name.

## MISREPRESENTATIONS AND OMISSIONS

26. Clark made material misrepresentations and omissions in the offer and sale of securities and in connection with the purchase or sale of securities. The misrepresentations and omissions relate to the following areas: (1) nature of the investment; (2) safety of the investment; (3) guaranteed profits; and (4) use of investor funds.

27. Clark told investors that the investment offering was low risk and had a high rate of return, when in fact, there was no legitimate investment.

28. Clark told investors that the principal on the investments was guaranteed to be returned, when in fact, Clark spent money he received from investors on personal and living expenses.

29. Clark told investors that returns were guaranteed and would be between 10% and 15,000% in ninety (90) days, when in fact, Clark made no legitimate investments and saw no legitimate investment returns.

30. Clark told investors that he personally knew that other investors had successfully obtained returns through this investment opportunity which was, in fact, untrue.

31. Clark told investors that their funds would be used to fund "top secret" Iraqi dinar and oil contracts, claimed to have access to secret governmental programs, and had access to a Wells Fargo Bank account with a balance of $4 billion, all of which were false.

32. When Clark and his business partner failed to pay investors as promised, Clark told investors that President Obama signed an executive order to stop the investment payout, which was not true.

## Materiality

33. The misrepresentations and omissions detailed above are material to a reasonable investor. Most or all of Clark's investors would not have invested or purchased securities from Clark if they had known the true nature of the investment, safety of the investment, profits and returns, and use of investor proceeds.

## Scienter

34. Clark acted with scienter. Clark personally solicited investors and made materially false and misleading statements, which he knew to be untrue, to obtain investment funds. Clark knew the investments were not profitable, knew that he did not have access to a

bank account with more than $4 billion, and knew that he used investor funds to pay for his personal living expenses.

## UNREGISTERED TRANSACTIONS

35. Clark sold unregistered securities and did nothing to assure that investors were accredited.

36. No registration statement has been filed with the Commission as to any offering or other securities offered by Clark.

## FIRST CAUSE OF ACTION
## FRAUD IN CONNECTION WITH THE PURCHASE AND SALE OF SECURITIES
**Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(b) thereunder [17 C.F.R. § 240.10b-5(b)]**

37. The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through 36, above.

38. Defendant, by engaging in the conduct described above, directly or indirectly, by the use of means or instrumentalities of interstate commerce or use of the mails, in connection with the purchase or sale of securities, with scienter, made untrue statements of material fact or omitted to state a material fact necessary in order to make statements made, in light of the circumstances under which they were made not misleading.

39. By reason of the foregoing, Defendant violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5(b) thereunder [17 C.F.R. § 240.10b-5(b)].

## SECOND CAUSE OF ACTION
## FRAUD IN THE OFFER AND SALE OF SECURITIES
**Violations of Section 17(a)(2) of the Securities Act
[15 U.S.C. § 77q(a)(2)]**

40. The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through 36, above.

41. Defendant, by engaging in the conduct described above, directly and indirectly, in the offer and sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, obtained money or property by means of untrue statements of material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

42. By reason of the foregoing, Defendant, directly or indirectly, violated and unless restrained and enjoined will continue to violate, Section 17(a)(2) of the Securities Act [15 U.S.C. §§ 77q(a)(2)].

### THIRD CAUSE OF ACTION
### OFFER AND SALE OF UNREGISTERED SECURITIES
### Violation of Sections 5(a) and (c) of the Securities Act
### [15 U.S.C. § 77e(a) and (c)]

43. The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through 36, above.

44. Defendant, by engaging in the conduct described above, directly or indirectly, through use of the means or instruments of transportation or communication in interstate commerce or the mails, offered to sell or sold securities or, directly or indirectly, or carried such securities through the mails or in interstate commerce, for the purpose of sale or delivery after sale.

45. No registration statement has been filed with the Commission or has been in effect with respect to these securities.

46. By reason of the foregoing, Defendant, directly or indirectly violated and unless enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

**RELIEF REQUESTED**

WHEREFORE, the Commission respectfully requests that this Court:

**I**

Issue findings of fact and conclusions of law that Defendant committed the violations charged herein.

**II**

Issue in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure orders that permanently enjoin Clark from engaging in transactions, acts, practices, and courses of business described herein, and from engaging in conduct of similar purport and object in violation of Sections 5(a), 5(c) and 17(a)(2) of the Securities Act, and Section 10(b) of the Exchange Act and Rule 10b-5(b) thereunder.

**III**

Enter an order directing Defendant to disgorge $1,778,500, the amount of ill-gotten gains received during the period of violative conduct.

**IV**

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

Dated March 31, 2016.　　　　　　　Respectfully submitted,

_____
Daniel J. Wadley
Amy J. Oliver
Attorneys for Plaintiff
Securities and Exchange Commission